■ THOMAS McSHERRY, an Infant, by His Mother, JEANNETTE Mc-SHERRY, et al., Appellants, v CITY OF NEW YORK, Respondent, and MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY et al., Appellants, et al., Defendants.—Order, Supreme Court, Bronx County, entered March 5, 1979, modified, on the law and the facts, to reinstate the jury's verdict as to liability only against defendant-respondent City of New York and to direct a new trial as to damages suffered by the infant plaintiff only; to reinstate the jury's verdict, as reduced by the court from $10,000 to the amount of special damage, $8,784.04, in favor of plaintiff-appellant Jeannette McSherry; to reinstate the jury's verdict in favor of defendants-appellants MABSTOA and Sanders; and otherwise affirmed, without costs. We here review the action of Trial Term in totally setting aside a jury's verdict, and directing a complete retrial of the entire case. We do not agree that the verdict, untoward in several respects, was beyond judicial repair, and we modify to return only one aspect of the case for retrial. The jury found for an infant plaintiff and his mother, derivatively against the city, exculpating the Manhattan and Bronx Surface Transit Operating Authority and its driver; the court, finding a compromise reflected by the verdict, set it aside completely. We modify, sending back for retrial only part of the case. This suit derives from an excavating job under the city's auspices, half the width of a residential street along which a bus ran, approximately 50 feet from the residence of the infant plaintiff. The excavation had existed upwards of 10 days when the accident occurred. Each day, during broad daylight at about 3:45 P.M. in June, the work crew would set out lighted round kerosene smudge pots about the excavation to warn drivers and pedestrians of danger, but without much selectivity as to choice of level terrain, or even attention to the Administrative Code of the City of New York (e.g., §§ C26-1901, 692-6.0). Though many mornings would find a number of pots moved from their locations by whatever force, some being recovered from the excavation pit itself, no inspection whatever was maintained after hours; this despite the fact that it was known that children in the area would carelessly kick them, endeavor to light sticks from them, etc., and that the road beside which placement was made was narrow, tortuous, and lined with piles of excavated dirt. On the critical day, the infant plaintiff, then about eight and a half, was seen by the bus driver at about 4:45 P.M. at the roadside, apparently endeavoring to light a stick from the flame atop a smudge pot; he stopped and blew his horn, and the boy stepped back about eight feet, leaving the pot where it was. The boy was still at his position of retreat as the driver came abreast and then was lost to sight—the bus had no right side mirror—as the bus continued. As it went further, the driver saw the boy in his left side mirror coming from behind the bus, enveloped in flame. Neighbors beat out and wet down the boy's burning shirt, ignited by a stream of burning kerosene. The driver, defendant Sanders, found a distorted smudge pot midtrack behind the bus, though it had escaped contact with the front wheels. It is not beyond reasonable inference that the pot had rolled down into the path of the bus as it was passing, either because of improper placement, or because it had been left and maintained without safeguard. In any event, based upon the driver's testimony, it is obvious that

the boy did not supply the force which rolled it down. Nor, it may be observed at this juncture, was any contribution made to this tragic event either by the driver or the victim, who had no reason, having moved back, to believe himself endangered. In short, there was ample evidence from which the jury had a right to find, as it did upon an impeccable charge, that sole liability rested upon defendant city. And, further, that there was no basis for finding that the jury had compromised on *liability,* even though conceivably so as to damage. Therefore, the verdicts on liability—for the infant plaintiff and for the bus authority and its driver—are to be reinstated. The court correctly reduced the mother's derivative verdict to the amount of special damage, but, that amount not being in question and the liability clearly shown, should not then have been set aside. We reinstate the revised verdict. This leaves for consideration only whether the $55,000 damage verdict for the infant plaintiff should stand. It is grossly inadequate. The boy will suffer from pain and sharply reduced capabilities all his life, having sustained horrible injuries to his entire back, his arms and his legs. If there was any good fortune whatever in the circumstances, it lay in his being faced away from the road at the moment he was subjected to liquid fire. It is noted, in connection with the inadequacy of the verdict, that the Trial Assistant Corporation Counsel stated his opinion in summation as to what dollar amount would compensate the infant plaintiff for his injuries; it is interesting to observe that he gave a figure which turned out to be almost three times the amount of the verdict which the jury later rendered. It should now be reassessed at a limited trial. Concur—Sandler, J. P., Sullivan, Markewich, Lupiano and Carro, JJ.